# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JASON DENNIS KEGLEY,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:22CV00427 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **LISA FERGUSON, ET AL.,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendants. ) | |
| ) | |

*Jason Dennis Kegley*, Pro Se Plaintiff; *Matthew J. Schmitt*, GUYNN, WADDELL, CARROLL & LOCKABY, P.C., Salem, Virginia, for Defendants.

The plaintiff, Jason Dennis Kegley, a Virginia inmate proceeding pro se, filed this action under 42 U.S.C. § 1983.  In his Amended Complaint, Kegley contends that defendants Lisa Ferguson, Lieutenant Travis Hamilton, Officer Donald Thomas, Officer Toni Trueheart (also referred to as Truhart), and Superintendent Gregory P. Winston confined him in a segregated housing unit for more than three months, in violation of his rights under the Fifth, Eighth, and Fourteenth Amendments of the Constitution and the Americans with Disabilities Act (ADA).  After review of the record, I conclude that the defendants' Motion to Dismiss must be granted as to Kegley's due process claims.  The case will proceed on Kegley's remaining claims not addressed in the defendants' motion.

I.

Kegley's claims arise from events that allegedly occurred while he was incarcerated at the New River Valley Regional Jail (NRVRJ). Kegley explains that he has been disabled since birth. He is paralyzed in both legs below the knee and uses a wheelchair. His left hand does not open and close fully, and he does not have good motor control or muscle function in that hand. Kegley also allegedly suffers from migraine headaches, severe anxiety, panic attacks, and scoliosis. He alleges that he needs surgery to replace three vertebrae with a titanium block, surgery for a double hernia, and surgery for carpal tunnel syndrome in one or both hands.

On May 13, 2022, NRVRJ officers told Kegley that he was moving from a cell in the medical dorm, F-100, to protective custody (PC), G-140 PC. Kegley asserts that he did nothing to warrant being placed in a PC cell and that when he questioned the move, no one would explain the reason for it. He claims that stress over the move caused him to suffer a headache, nausea, and chest pains. He also believed that he was having a heart attack.

According to Kegley, the medical dorm is an open concept living area that is wheelchair accessible. Inmates can move around in the unit, watch television, use the water fountain, access tablets for internet use, and read books from the unit's bookshelf. Inmates in this unit also get recreation three times per week.

Assignment to a PC/segregation cell, by contrast, means the inmate is confined to a one-person cell for 23 hours a day. During a one-hour period every day (at varying times), the inmate may leave the cell for recreation or a shower. Recreation consists of confinement to a small room with a phone on the wall and a window, without any exercise equipment, television, or other media devices. The shower provided for PC inmates when Kegley was moved to that unit was not equipped for a handicapped individual. His PC cell was handicapped accessible, but he contends that it was filthy and that he requested cleaning supplies.

On May 18, 2022, officers took Kegley from his PC cell to the medical unit where a nurse examined him. Lisa Ferguson came in and told him that, "she had put [him] in G-140, and she would keep [him] there until [he] went to prison which would be as soon as she could make it happen."[1] Am. Compl. 11, ECF No. 33. Kegley states that he "petitioned every day to be taken back to F-100." *Id.* at 17. In response to one of his request forms, an officer stated, "For your safety, I can't move you" because of your enemy list. Id. at Ex. A at 1, ECF No. 33-2.

Kegley asked repeatedly for the segregation shower to be "fixed." Am Compl. 17, ECF No. 33. On June 16, 2022, a maintenance worker placed a handheld shower

---

[1] Ferguson later told Kegley that other jail officials had been involved in deciding where he should be housed and that she could not reverse the decision by herself. Based on this information, Kegley has included Winston, Thomas and Hamilton as defendants, believing that they are involved in classification decisions.

wand in the shower cubicle, and Kegley also obtained cleaning materials. He cleaned the shower and then showered himself. Kegley asserts that being forced to beg for an accessible shower for 34 days violated the ADA. Ultimately, Kegley alleges that jail officials kept him in the F-100 housing assignment until August 25, 2022, a total of 104 days.

Liberally construed, Kegley's Amended Complaint asserts the following claims against the defendants: (1) assignment to PC without due process; (2) conditions in PC violated the Eighth Amendment; and (3) conditions in PC violated the ADA. The defendants move for dismissal of Kegley's claims. The court notified Kegley of his opportunity to respond to the defendants' motion, and he did so. Therefore, I find the motion to be ripe for consideration.[2]

II.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim, but "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C.,* 980 F.2d at 952. In considering a Rule

---

[2] Kegley's response to the defendants' motion included requests for discovery (copies of photos and surveillance footage). Because a Motion to Dismiss must be decided based on the contents of the Complaint, *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), I conclude that the defendants' motion is ripe for consideration without reference to any requested discovery information. Because the case will continue as to some claims, Kegley may file appropriate discovery requests to defense counsel for the desired footage or other documentation.

12(b)(6) motion, a court must accept all factual allegations in a complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  To survive a motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The defendants present two arguments in support of their Motion to Dismiss: (a) Kegley fails to state facts showing that he had a protected liberty interest in avoiding PC housing at NRVRJ and (b) Kegley fails to show how each of the defendants acted personally in violation of his rights.  I agree that Kegley fails to demonstrate deprivation of a protected liberty interest.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  Where a claimant asserts procedural due process claims, the court must first consider whether the inmate has asserted a protected

interest at stake and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest. *Incumaa v. Stirling*, 791 F.3d 517, 526 (4th Cir. 2015). In other words, a plaintiff must identify a protected interest at stake before the court examines whether the procedures attendant to deprivation of that interest were constitutionally sufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). An inmate demonstrates a protected interest by showing it involves an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[G]eneral population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." *Incumaa*, 791 F.3d at 527.

  The Fourth Circuit has held that inmates confined to segregation for six months, complaining of no outside recreation, no clean clothes, less food, and cells infested with vermin and smeared with urine and feces, did not demonstrate deprivation of a protected liberty interest or entitlement to federal due process procedures before being subjected to such conditions. *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997). These conditions, and the length of time the inmates were subjected to them, were much more severe than the conditions Kegley allegedly experienced in PC for three months at NRVRJ. Accordingly, I cannot find that the

segregation conditions of which Kegley complains were atypical enough to impose a "significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  I will grant the defendants' motion as to Kegley's due process claim with prejudice.

However, I will not grant the motion as to Kegley's claims under the Eighth Amendment or the ADA.  First, the defendants have not acknowledged or responded directly to these claims.  Moreover, liberally construed, Kegley's Amended Complaint states that each of the remaining defendants is a classification officer or supervisory official and thus played some role in the classification decision that caused Kegley's confinement in a PC cell without appropriate accommodation of his physical disabilities for several weeks.

### III.

For the stated reasons, it is **ORDERED** as follows:

1. All claims against the following defendants named in the original Complaint are DISMISSED WITHOUT PREJUDICE because no claim is stated against them in the Amended Complaint: Classification Authority of the New River Valley Regional Jail, the Medical Authority of New River Valley Regional Jail, and the Administrative Authority of New River Valley Regional Jail.  The Clerk shall terminate these entities as parties.

2. The defendants' Motion to Dismiss, ECF No. 37, is GRANTED IN PART AND DENIED IN PART; the motion is GRANTED as to Kegley's due process claims, but the motion is DENIED as to Kegley's Eighth Amendment and ADA claims; and

3. The remaining defendants are DIRECTED to file any motion seeking summary judgment within 28 days following the entry of this Opinion and Order.

        ENTER: December 27, 2023

        /s/ JAMES P. JONES
        Senior United States District Judge